# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GARY RAMSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | 05-CV-330-JHP-PJC |
| | ) | |
| WESCO, INC.; RATKO PANICH; GREAT WEST CASUALTY INSURANCE; UNITED NATIONAL SPECIALTY INSURANCE COMPANY; RWI TRANSPORTATION; L.L.C., XTRA LEASE INC. a.k.a. STRICK LEASE, INC.; XTRA LEASE, L.L.C.; RILEY WHITTLE, INC.; MATTHEW RAY UNRUH, deceased; and ESTATE of MATTHEW RAY UNRUH | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER:**

Now before the Court is the Motion to Dismiss filed by Defendants XTRA Lease, Inc. and the XTRA Lease, L.L.C. ("XTRA Defendants") [docket number 5-1], the Plaintiff's Response, and the Defendants' Reply. Also before the Court is the Motion to Dismiss filed by Defendants Ratko Panich, Great West Casualty Company, RWI Transportation, and Riley Whittle, Inc. ("RWI Defendants") [docket number 8-1], the Plaintiff's Response, and the Defendant's Reply. The Court hereby finds that the XTRA Defendants' motion is hereby DENIED and that the RWI Defendants' motion is hereby GRANTED.

**BACKGROUND:**

This dispute arose from an accident that occurred in the State of Indiana on June 17,

1

2003.  The accident involved the Plaintiff, Gary Ramsey, and the Defendants, Matthew Ray Unruh ("Unruh") and Ratko Panich ("Panich"), who all were driving large trucks.  As the Plaintiff was driving along Interstate 70, Unruh collided with the rear portion Plaintiff's truck and caused the Plaintiff's truck to collide with Panich's truck.  The accident resulted in significant property damage to all three of the trucks, the death of Unruh, and significant personal injuries to the Plaintiff.

Due to the injuries and property damage sustained by the Plaintiff, he filed suit against the named Defendants.  Originally, the Plaintiff filed this action in the Creek County District Court but that action was removed to this Court pursuant to 28 U.S.C. § 1332.  Prior to filing an answer to the Plaintiff's Complaint, both the XTRA Defendants and the RWI Defendants filed this motion to dismiss for lack of personal jurisdiction.

## DISCUSSION:

Pursuant to the laws of Oklahoma, personal jurisdiction in the courts is to be extended to the fullest extent allowable under both the Oklahoma and United States Constitutions.  *See* Okla. Stat. tit. 12,  § 2004(F).  The Oklahoma Supreme Court has ruled that the standard for personal jurisdiction in this state is coextensive with that of the Due Process Clause of the United States Constitution.  *See generally Marathon Battery Co. v. Kilpatrick*, 418 P.2d 900 (Okla. 1966).  In the oft-cited case of *International Shoe v. Washington*, 326 U.S. 310 (1945), the United States Supreme Court articulated the proper framework to analyze a question of personal jurisdiction under the United States Constitution.  Specifically, the Supreme Court held "due process requires . . . that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the

maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316 (citations and internal quotations omitted). For a corporation or business to be present within the forum it must be a resident of the forum.

Here, Plaintiff does not contend the Defendant is present within the state of Oklahoma, and there is no evidence to support such a finding; therefore, this Court must determine whether the Defendant has sufficient minimum contacts with the state to justify being brought before this Court. If minimum contacts are found to exist, the Court must then determine whether the exercise of jurisdiction offends the "traditional notions of fair play and justice." *Int'l Shoe*, 326 U.S. at 316 (citations and internal quotations omitted).

Since the *Int'l Shoe* decision, the courts have been provided with a more succinct structure to examine the jurisdictional inquiry. *See, e.g., World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090-91 (10th Cir. 1998). The Tenth Circuit, in articulating a roadmap for the personal jurisdiction analysis, stated:

> The "minimum contacts" standard may be met in two ways. First, a court may, consistent with due process, assert *specific* jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (internal quotations omitted). Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). However, "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business

3

>contacts.'" *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Helicopteros*, 466 U.S. at 416, 104 S. Ct. 1868).

*OMI Holdings, Inc.*, 149 F.3d at 1090-91.

Plaintiff has the burden of "establishing personal jurisdiction over the defendant." *Id.* at 1091 (quoting *Rambo v. Am. Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988)). If the Court determines an evidentiary hearing is not necessary the plaintiff must only "make . . . [a] prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* Moreover, "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ." *Behagen v. Amateur Basketball Assn. USA*, 744 F.2d 731, 733 (10th Cir. 1984). In this case, there are no significant questions of fact that must be resolved in either party's favor, so the Court must determine if the exercise of personal jurisdiction is proper.

### *A. Specific Jurisdiction:*

In this case it is undisputed the events giving rise to Plaintiff's allegations did not "arise out of or relate to" the activities that the Defendant undertook in this State. Therefore, specific jurisdiction would not allow this court to exercise personal jurisdiction over any of the Defendants. Thus, the Court must determine if it would be appropriate to exercise general jurisdiction.

### *B. General Jurisdiction:*

### *1. XTRA Defendants:*

To satisfy the general jurisdiction inquiry, the Plaintiff must show that XTRA has sufficient "continuous and systematic general business contacts" with Oklahoma. *OMI*

*Holdings, Inc.*, 149 F.3d at 1090-91 (quoting *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (internal quotations omitted)).  In this case, it is clear that XTRA maintains sufficient contacts with the State of Oklahoma to permit this Court to exercise jurisdiction over it.  To be sure, XTRA owns and operates a branch office within this forum state whereby it leases semi-trailers to both individuals and companies seeking to transport goods throughout the United States.  XTRA also pays state taxes and employs people to operate its Oklahoma City branch office.  These contacts with the State of Oklahoma are certainly adequate to meet the standard of "continuous and systematic general business contacts" and to permit the Court to determine that XTRA has sufficient minimum contacts with this state to permit jurisdiction.

The Defendant argues that exercising personal jurisdiction in this case would be improper because "Plaintiff has not even alleged that Xtra's Oklahoma facility had any connection at all with the accident which is the subject of this action, and it did not."  Defendants XTRA Lease, Inc. And XTRA Lease, LLC's Reply to Plaintiff's Response to Motion to Dismiss at 1.  In support of that position, XTRA cites to language from *Burger King* concerning the proper test for specific jurisdiction.

It is clear from the pleadings that the Defendant does not fully appreciate the two part inquiry that must be undertaken by the Court when determining whether the exercise of personal jurisdiction is proper.  Unlike the *Burger King* case, there is no dispute in this case that the litigation arose out of activities independent of the XTRA Defendants' activities in the forum state, thus there is no allegation that **specific** jurisdiction is the proper framework upon which to examine this case.  Rather, the Plaintiff is asserting that this Court has jurisdiction based upon

the continuous and systematic contacts that XTRA has with the State of Oklahoma. Plaintiff is asserting this Court has jurisdiction based upon **general** jurisdiction principles. As the Tenth Circuit has articulated, "Where [g]eneral jurisdiction lies . . . the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state." *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 455-56 (10th Cir. 1996) (internal quotations omitted) (quoting *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996)). Thus, the Court finds that XTRA has sufficient minimum contacts with the State of Oklahoma to permit the exercise of personal jurisdiction within the ambit of the Due Process Clause.

Even though sufficient minimum contacts have been found to exist, the Court's inquiry does not end there. Instead, the Court must next determine whether the exercise of jurisdiction over the Defendants would offend the traditional notions of fair play and justice. *OMI Holdings, Inc.*, 149 F.3d at 1091. This inquiry requires the defendant to prove the litigation in the chosen forum will be "'so gravely difficult and inconvenient' that [the] party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Burger King Corp.*, 471 U.S. at 478 (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)). To determine whether the exercise of jurisdiction would offend fair play and justice, the Court is to consider,

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and (5) the shared interest of the several states in furthering fundamental substantive policies.

*OMI Holdings, Inc.*, 149 F.3d at 1095 (quoting *Asahi Metal Indus. Co. v. Superior Ct. Of Cal.*, 480 U.S. 102, 113 (1987)).

In this case, there is nothing in the record nor any reason for the Court to find that the exercise of jurisdiction in this case would offend the traditional notions of fair play and justice. Again, due to the continuous and systematic contacts that the XTRA Defendants have with the State of Oklahoma, it certainly would not provide an undue burden on the XTRA Defendants to respond to a lawsuit in this State.  Furthermore, the State of Oklahoma has a very strong interest in protecting its citizens from the torts of others.  As a result, the Court finds that the exercise of jurisdiction over XTRA would not offend the Due Process Clause.

## 2. RWI Defendants:

Unlike the motion with respect to the XTRA Defendants, the Plaintiffs here do not suggest or even allege that the Defendants have the adequate continuous and systematic contacts with the State of Oklahoma to permit general jurisdiction.  Instead, the Plaintiffs argue that "since co-defendant XTRA maintains significant contacts with Oklahoma, it does not offend the traditional notions of fair play and substantial justice for defendants Panich and RWI to defend this case in Oklahoma."  Plaintiff's Response to Defendants Ratko Panich (Panich), TWI Transportation, and Riley Whittle, Inc. (Herein Collectively Referred to as RWI) and Great West Casualty Company (Great West) Motion to Dismiss at 3 [hereinafter Response to RWI].  The Plaintiff also admits that he "has not had any opportunity to perform any type of discovery to determine whether RWI, Panich and Great West have sufficient systematic and continuous contacts with Oklahoma to maintain the case here."  *Id.*  The Court finds this admission to be extremely problematic, considering Rule 11 requires the parties to have a reason to believe based on the "person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the allegations, including jurisdictional statements, have evidentiary

7

support or will likely have evidentiary support following some limited amount of investigation or discovery. Fed. R. Civ. P. 11(b). Nonetheless, this lack of discovery or information certainly destroys Plaintiff's personal jurisdiction argument. The attempt to expand XTRA's general jurisdiction to cover the RWI Defendants is entirely without merit as the Due Process Clause requires an individual analysis into each Defendant's contacts with the forum state.

Finally, the Plaintiff argues Okla. Stat. tit. 12, § 135 "specifically states that a transportation or transmission company, such as the defendants, can be sued in any County where they drive." Response to RWI at 5. The statute cited by the Plaintiff, however, is irrelevant to the inquiry before the Court. First, as the RWI Defendants properly point out the statute cited is a venue statute and does not play any role with regard to the Court's personal jurisdiction analysis. Second, even if the statute was one concerning personal jurisdiction, the Court would not be permitted to exercise personal jurisdiction over the RWI Defendants if it violated the Due Process Clause of the U.S. Constitution. As discussed above, the RWI Defendants do not maintain the necessary minimum contacts with the State of Oklahoma, so any assertion of personal jurisdiction would be violative of the Due Process Clause. Therefore, the exercise of personal jurisdiction under the general jurisdiction framework would be improper.

## CONCLUSION:

Because the Court finds that the XTRA Defendants have sufficient continuous and systematic contacts with the State of Oklahoma to permit general jurisdiction, the exercise of personal jurisdiction over them is proper. Moreover, the Court's inquiry into the traditional notions of fair play and justice do not suggest that the exercise of jurisdiction against the XTRA Defendants here would be violative of the Due Process Clause. Conversely, the Court finds that

the RWI Defendants do not have sufficient minimum contacts with the State of Oklahoma, so any exercise of personal jurisdiction would be in violation of the U.S. Constitution. Thus, the XTRA Defendants' Motion to Dismiss is hereby DENIED and the RWI Defendants' Motion to Dismiss is hereby GRANTED.

IT IS SO ORDERED this 1st day of September, 2005.

_____
James H. Payne
United States District Judge
Northern District of Oklahoma